IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KENY MEDRANO CAMBARA, et al., | |
| Plaintiff, | 8:14-CV-260 |
| vs. | |
| AMBER SCHLOTE, et al., | MEMORANDUM AND ORDER |
| Defendants. | |

Keny Medrano Cambara was tried for the death of Brianna Medrano, a minor child she babysat, and was ultimately acquitted. Filing 1-1 at 3; *see* filing 15 at 1. She, her husband, and their minor children, are suing the Omaha Police Department, the City of Omaha, individual Omaha police officers (collectively, "City Defendants"), Douglas County, the Douglas County Attorney's Office, Douglas County Attorney Don Kleine (collectively, "County Defendants"), a non-profit called Project Harmony, and Suzanne Haney, M.D., a Project Harmony employee. Filing 1-1 at 1–4. The City Defendants (filing 19), County Defendants (filing 14), Project Harmony (filing 21), and Haney (filing 17) have each filed a motion to dismiss on various grounds.

## BACKGROUND

The plaintiffs bring claims of state law negligence and constitutional claims under 42 U.S.C. § 1983, asserting that defendants committed various wrongs in their investigation and prosecution of Keny Medrano Cambara for Brianna Medrano's death. *See generally* filing 1-1.

First, the plaintiffs allege that the defendants negligently failed to investigate Brianna Medrano's death, to produce exculpatory evidence, and to otherwise follow relevant policies and procedures governing criminal investigation and prosecution. Filing 1-1 at 4–7. As a result, according to the plaintiffs, Medrano Cambara was "subjected to prolonged interrogation, investigation, arrest, confinement without bail, monitoring, prosecution, and trial," which plaintiffs allege caused physical and mental suffering, humiliation, loss of wages, and other forms of damages. Filing 1-1 at 7.

Second, the plaintiffs assert that defendants "individually and acting in concert, deliberately and with reckless disregard for the truth" falsified evidence, failed to disclose exculpatory information, failed to properly investigate, provided false testimony, and otherwise did not follow proper

procedures governing criminal investigation and prosecution. Filing 1-1 at 8. This resulted, according to the plaintiffs, in violations of Medrano Cambara's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Filing 1-1 at 9.

Third, the plaintiffs allege that Douglas County, the City of Omaha, and the Omaha Police Department had "policies, practices, and customs that deprived . . . Medrano Cambara of her constitutional rights." Filing 1-1 at 10. These include failure to train and supervise officers, failure to discipline officers, and other practices that allegedly "were deliberately and purposefully implemented to deprive the targets of criminal investigations of their constitutional rights." Filing 1-1 at 10.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

2

DISCUSSION

1. COUNTY AND CITY DEFENDANTS' MOTIONS TO DISMISS

Because the County Defendants and City Defendants raise largely the same legal issues, the Court considers their motions together.

(a) Claims against the Douglas County Attorney's Office and the Omaha Police Department

*(i) Negligence claims*

The plaintiffs have sued Douglas County, the City of Omaha, the Douglas County Attorney's Office, and the Omaha Police Department for negligence as political subdivisions. *See* filing 1-1 at 2; 14 at 8. The County Defendants move to dismiss the negligence claim as to the Douglas County Attorney's Office, arguing that the County Attorney's Office is not a political subdivision or any other entity subject to suit under Nebraska law. Filing 15 at 7–8. Similarly, the City Defendants move to dismiss the negligence claim as to the Omaha Police Department (OPD), contending it, too, is an entity not subject to suit. Filing 20 at 2. The plaintiffs counter that the defendants define "political subdivision" too narrowly, and that they should be allowed to maintain their negligence claims against the County Attorney's Office and OPD. *See* filing 14 at 8; 28 at 8.

According to Neb. Rev. Stat. § 23-101, "Each county, established in this state according to the laws thereof, shall be a body politic and corporate, by the name and style of The county of ….., and by that name may sue and be sued . . . ." Similarly, Neb. Rev. Stat. § 14-101 states that cities have the capacity to be sued. In addition to these specific provisions for counties and cities, Nebraska law provides that any government entity may be sued in its own name if it is an independent political subdivision. Neb. Rev. Stat. § 13-903. Political subdivisions include "villages, cities of all classes, counties, school districts, learning communities, public power districts, and all other units of local government." *Id.* A political subdivision is characterized by "a governing body with the power and authority to appropriate funds and make expenditures." *Meyer v. Lincoln Police Dept.*, 347 F. Supp. 2d 706, 707 (D. Neb. 2004).

Departments and agencies of county or municipal governments are not political subdivisions under Nebraska law. *See Holmstedt v. York County Jail Supervisor*, 736 N.W.2d 449, 461 (Neb. App. 2007). A government department or agency is not a separate legal entity, but an "alter ego[] of the state itself." *Catania v. Univ. of Neb.*, 282 N.W.2d 27, 30 (Neb. 1979). Thus, a plaintiff with a claim against—for example—a department of the county government must sue the county, rather than the department itself. *Holmstedt*, 736 N.W.2d at 461.

3

Nebraska courts have concluded that a county sheriff's department is not an independent political subdivision; rather, it is a department of the county government. *Id.* The Court sees no difference between a county sheriff's department and a county attorney's office or city police department. No facts before the Court lead to the inference that either the County Attorney's Office or OPD have their own governing bodies with the power to levy taxes or make expenditures. Other federal courts interpreting Nebraska law have come to the same conclusion. *See Meyer*, 347 F. Supp. 2d at 707; *White v. Smith*, 2009 WL 3335967 at *10 (D. Neb. 2009). For these reasons, the Court grants the County and City Defendants' motions to dismiss the negligence claims against the County Attorney's Office and OPD.

### (i) Section 1983

The County Defendants also move to dismiss the plaintiffs' § 1983 claims against the County Attorney's Office, contending that the County Attorney's Office is not subject to suit under § 1983 both because it is not subject to suit under Nebraska law, and because it is not a "person" under § 1983. The City Defendants move to dismiss the § 1983 claim against OPD for the same reasons.

Fed. R. Civ. P. 17(b)(3) states that a court must look to "the law of the state where the court is located" to determine whether the defendant has the capacity to be sued. *See White*, 2009 WL 3335967 at *10. As discussed above, neither the County Attorney's Office nor OPD has the capacity to be sued under Nebraska law, because neither has an independent legal identity. Thus, neither can be sued under § 1983. The Court does not reach the question of whether either the County Attorney's Office or OPD are "persons" under § 1983. The Court dismisses the plaintiffs' § 1983 claims with respect to the County Attorney's Office and OPD.

### (b) Negligence claim against Douglas County and City of Omaha

The County Defendants move to dismiss the plaintiffs' negligence claims against Douglas County and Kleine, arguing that political subdivisions and their employees are immune from claims arising from "false arrest, false imprisonment, malicious prosecution, and misrepresentation," even if styled as negligence claims. Filing 15 at 16. For the same reasons, the City Defendants move to dismiss the plaintiffs' negligence claims against the City of Omaha and its employees Schlote, Hernandez, Yanez, and Worthy. Filing 20 at 3.

Under Neb. Rev. Stat. § 13-902, a political subdivision and its employees are immune from tort claims except as provided by the Political

Subdivisions Tort Claims Act (PSTCA), Neb. Rev. Stat. §§ 13-901, *et seq.*[1] The PTSCA specifies that it does not waive immunity for "[a]ny claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Neb. Rev. Stat. § 13-910(7).

An action may "arise out of" one of these enumerated intentional torts even if it is styled as a negligence action. According to the Nebraska Supreme Court, "[The exception] does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like [the plaintiff's] that sound in negligence but stem from a battery committed by a Government employee." *Britton v. City of Crawford*, 803 N.W.2d 508, 517 (Neb. 2011) (alterations in original) (quoting *United States v. Shearer*, 473 U.S. 52, 105 (1985).

For example, in *Britton*, the plaintiff alleged that a police officer was negligent in his decision to shoot a suspect instead of engaging in negotiation or other nonviolent conflict resolution. *Id.* at 512. The Nebraska Supreme Court concluded the negligence claim was a "semantic recasting of events," reasoning that although the negligence may have caused the battery, without the battery there would have been no claim. *Id.* at 518. Because the "alleged negligence was inextricably linked to a battery," the PSTCA barred the suit. *Id.*

Here, as in *Britton*, the "allegation is that the Government was negligent . . . and that the intentional tort occurred as a result." *Id.* (quoting *Johnson v. State*, 700 N.W.2d 620, 625 (Neb. 2005)). According to the plaintiffs, the City and County Defendants committed several negligent acts, including negligently providing false testimony, failing to investigate, and failing to disclose exculpatory information. Filing 1-1 at 4–5. But defendants' alleged negligence did not, on its own, harm the plaintiffs. Rather, the plaintiffs allege that as a "direct and proximate result" of the defendants' negligence, Medrano Cambara "was subjected to prolonged interrogation, investigation, confinement without bail, monitoring, prosecution, and trial." Filing 1-1 at 7. These are claims that sound in the intentional torts of false imprisonment, malicious prosecution, and misrepresentation.

First, the allegations of wrongful imprisonment and confinement describe the tort of false imprisonment—"the unlawful restraint against his

---

[1] Plaintiffs have alleged that Klein, Schlote, Hernandez, Yanez, and Worthy all acted within the scope of their employment at the time of the allegedly negligent conduct. Filing 1-1 at 3. For the purposes of a motion to dismiss, the Court takes all allegations in the complaint as true. *See Twombly*, 550 U.S. at 555. Therefore, the Court considers the PSTCA's preservation of immunity to apply to each of the individual employees, just as it applies to their employers.

will of an individual's personal liberty." *See Herbrick v. Samardick & Co.*, 101 N.W.2d 488, 491 (Neb. 1960). Next, the allegations of wrongful interrogation, investigation, prosecution, and trial describe the tort of malicious prosecution—the malicious commencement of proceedings against an individual without probable cause which terminate in the accused's favor. *See McKinney v. Okoye*, 842 N.W.2d 581, 591 (2014). Finally, to the extent that plaintiffs complain of false testimony and other evidence, those allegations constitute claims of misrepresentation—conveying, willfully or negligently, inaccurate information. *See Stonacek v. City of Lincoln,* 279 Neb. 869, 883, 782 N.W.2d 900, 911 (2010).

In sum, the negligence that the plaintiffs allege is inextricably linked to false imprisonment, malicious prosecution, and misrepresentation. The PSTCA specifically provides that claims arising from these torts may not be brought against political subdivisions and their employees. The fact that negligence allegedly led the defendants to commit those torts is not sufficient to circumvent the PTSCA's preservation of immunity. The plaintiffs' negligence claims against Douglas County, Kleine, the City of Omaha, and Klein, Schlote, Hernandez, Yanez, and Worthy are dismissed.

### (c) Plaintiffs Ruben Cambara Cambara, Angie Cambara Medrano, and Diana Cambara Medrano's § 1983 claims

The County Defendants argue that Ruben Cambara Cambara, both individually and on behalf of minor children Angie and Diana Cambara Medrano, fails to state a plausible claim for relief under § 1983. Filing 15 at 24. They contend that because the plaintiffs allege that only Keny Medrano Cambara's constitutional rights were violated, the other plaintiffs have no standing to bring a § 1983 claim. Filing 15 at 24. The City Defendants make an analogous argument that Cambara Cambara and the minor children are not real parties in interest as required by Fed. R. Civ. P. 17(a)(1). Filing 20 at 7.

As a prudential requirement of standing, a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). However, a plaintiff may assert the rights of a third party in a limited range of circumstances. To determine whether this is appropriate in a given case, courts consider two factors. First, courts consider "the relationship of the litigant to the person whose rights he seeks to assert." *Singleton v. Wulff*, 428 U.S. 106, 115 (1976). If the relationship is close, and "[i]f the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue," the court can be sure the litigant "is fully, or very nearly, as effective a proponent of the right" as the third party. *Id.* Thus, for

6

instance, a doctor may assert his patient's right to contraceptives; his ability to provide medical advice on contraceptives is "inextricably bound up" with his patient's right to receive it. *Id.* Next, courts look to "the ability of the third party to assert his own right." *Id.* at 115–16. Even if the plaintiff and third party have a close relationship, only where there is "some genuine obstacle" to the third party asserting his own rights may a plaintiff assert the third party's rights on his behalf. *Id.* at 116.

The plaintiffs allege violations of constitutional rights belonging solely to Medrano Cambara. In particular, they allege that she was seized in violation of the Fourth and Fourteenth Amendments, deprived of due process in violation of the Fifth and Fourteenth Amendments, deprived of a speedy trial in violation of the Sixth and Fourteenth Amendments, and subjected to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Filing 1-1 at 7. The complaint contains no claims that the rights of the other plaintiffs were violated; only that they were harmed by the violations of Medrano Cambara's rights.

In their response to the County Defendants' motion to dismiss, the plaintiffs allege violations of a Fourteenth Amendment right to familial association belonging to Cambara Cambara and the minor children. Filing 29 at 11–12. However, the allegations in the complaint are not sufficient for the Court to draw the reasonable inference that the defendants are liable for this violation. *See Iqbal,* 556 U.S. at 678. Wrongful prosecution or incarceration of a family member alone is not sufficient to establish a violation of the right to familial association. *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 585 (8th Cir. 2006). Rather, violation of the right requires intent to interfere with the familial relationship. *Id.* Plaintiffs have not alleged any facts that could support an inference of such intent here.

Because Cambara Cambara and the minor children have not properly alleged violations of their own rights, their § 1983 claim survives only if they can establish third-party standing to assert Medrano Cambara's rights. But the relationship between Medrano Cambara and her husband and children is not the kind of relationship that gives rise to third-party standing. They do not seek to pursue some activity which has been prohibited to them in violation of Medrano Cambara's rights; rather, they allege that they have already been harmed by the alleged violations. Further, they cannot argue that Medrano Cambara is unable to assert her own rights; as a party to this lawsuit, she can and has done so. Thus, the Court finds that third-party standing is inappropriate for this case. The Court does not reach the City Defendants' Fed. R. Civ. P. 17(a)(1) argument. The § 1983 claims of Cambara Cambara and the minor children are dismissed.

7

(d) Constitutional violations and § 1983

Next, the City and County Defendants argue that Medrano Cambara has failed to state a plausible claim for relief with respect to the alleged violations of her Fifth Amendment due process rights, Sixth and Fourteenth Amendment speedy trial right, Eighth Amendment and Fourteenth right against cruel and unusual punishment, and Fourteenth Amendment right to *Brady* disclosures. *See*, filing 15 at 27; 20 at 7–8. The City Defendants additionally contend that Medrano Cambara cannot state a plausible claim for relief with respect to any alleged violations of Fourteenth Amendment due process rights. Filing 20 at 8.

*(i) Fifth Amendment Due Process*

The plaintiffs have alleged that defendants deprived Medrano Cambara of her liberty "without due process of law in violation of the Fifth and Fourteenth Amendments." Filing 1-1 at 9. The City and County Defendants argue that because the Fifth Amendment due process right is a limitation on federal, rather than state, actors, the plaintiffs' alleged Fifth Amendment violations should be dismissed. Filing 15 at 28–29; 20 at 8.

The complaint asserts that defendants are either political subdivisions or employees of political subdivisions of the state. *See* filing 1-1 at 2–3. They do not allege that any defendant is a federal actor. Thus, the proper claim is that the defendants violated Medrano Cambara's Fourteenth Amendment due process rights, not her Fifth Amendment due process rights. *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010). To the extent that Medrano Cambara pleads a violation of her Fifth Amendment due process rights, that claim is dismissed. However, Medrano Cambara may still pursue her claims that defendants violated her due process rights under the Fourteenth Amendment.

The City Defendants contend that the same logic applies to the alleged violations of Medrano Cambara's Fourth, Sixth, and Eighth Amendment rights. Filing 20 at 8. However, the Court construes the plaintiffs to be alleging violations of each of those rights as incorporated to the states through the Fourteenth Amendment. Consequently, the Court denies the City Defendants' motion to dismiss the Fourth, Sixth, and Eighth Amendment claims on those grounds.

*(ii) Sixth Amendment Speedy Trial*

Medrano Cambara alleges that defendants violated her Sixth and Fourteenth Amendment right to a speedy trial. Filing 1-1 at 9. The City and County Defendants argue that this claim should be dismissed because

8

Medrano Cambara has alleged no facts supporting an inference her trial was delayed in any way. Filing 15 at 27; 20 at 9.

To determine if an individual's speedy trial right has been violated, the court must balance the following four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Here, Medrano Cambara has alleged nothing that indicates her trial was delayed at all, let alone why or for how long, or whether the delay prejudiced her. Because the Court is unable to draw the reasonable inference that the defendants are liable for this violation, Medrano Cambara's claim for violation of her speedy trial right is dismissed. *See Iqbal*, 556 U.S. at 678. However, Medrano Cambara is given leave to replead this claim with greater particularity.

### (iii) Eighth Amendment Cruel and Unusual Punishment

The County and City Defendants argue that Medrano Cambara cannot state a plausible claim for relief for an alleged violation of her Eighth and Fourteenth Amendment right against cruel and unusual punishment because she was never convicted. Filing 15 at 31; 20 at 9–10.

The Eighth Amendment, as incorporated to the states through the Fourteenth Amendment, offers protection for defendants who have been convicted of crimes. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Pretrial detainees may bring claims for violations of their rights during detention only under Fourteenth Amendment due process. *Id.* at 536. Here, Medrano Cambara was acquitted. Filing 1-1 at 3. Therefore, she cannot sustain a cruel and unusual punishment claim under the Eighth and Fourteenth Amendments. Her § 1983 claim with respect to the alleged violation of Medrano Cambara's right against cruel and unusual punishment is dismissed.

### (iv) Fourteenth Amendment Brady Violations

The County Defendants argue that to the extent Medrano Cambara alleges a violation of her Fourteenth Amendment right to disclosure of exculpatory material, she cannot state a plausible claim for relief. Filing 15 at 33. A violation of this right, known as a *Brady* violation, occurs when the state has failed to provide a defendant with evidence favorable to her defense, and the suppressed evidence reasonably could have produced a different verdict. *See Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012). In other words, an individual's Fourteenth Amendment right to exculpatory evidence is violated only if that individual is convicted. *Id.* Here, Medrano Cambara was acquitted, so she cannot state a plausible claim for relief for a *Brady*

violation. The Court dismisses her § 1983 claim with respect to the alleged violation of the Fourteenth Amendment right to exculpatory evidence.

*(v) Fourteenth Amendment Due Process*

The City Defendants argue that Medrano Cambara cannot state a plausible claim for relief with respect to any violation of her Fourteenth Amendment due process rights because she was acquitted. Filing 20 at 9. They contend that "[i]t defies logic to assert a due process violation when the due process protections provided" resulted in acquittal. Filing 20 at 9.

But in many circumstances a criminal defendant's due process rights can be violated even without a conviction. For instance, in a § 1983 case involving failure to investigate, the Eighth Circuit permitted the plaintiff to bring claims for due process violations even though he was acquitted of criminal charges. *See Akins v. Epperly*, 588 F.3d 1178, 1183 n.2 (8th Cir. 2009). The Fourteenth Amendment right that was violated was not the right to be free from an unjust conviction, but the right to "obtain[] fair criminal proceedings before being denied one's liberty in the most traditional sense." *Id.* (quoting *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 956 n.8 (8th Cir. 2001)).

Thus, because there is no general rule that due process is violated only upon conviction, Medrano Cambara is not barred from pursuing her Fourteenth Amendment due process claims. The City Defendants' motion to dismiss Medrano Cambara's § 1983 claim with respect to alleged violations of her Fourteenth Amendment due process rights is denied.

2. HANEY AND PROJECT HARMONY'S MOTIONS TO DISMISS

Because Haney and Project Harmony raise largely the same legal issues, the Court considers their motions together.

(a) <u>Plaintiffs Ruben Cambara Cambara, Angie Cambara Medrano, and Diana Cambara Medrano's § 1983 claims</u>

As discussed above, the Court has dismissed the § 1983 claims as to plaintiffs Ruben Cambara Cambara, Angie Cambara Medrano, and Diana Cambara Medrano.

(b) <u>Color of law under § 1983</u>

Haney and Project Harmony argue that Medrano Cambara's § 1983 claims against them should be dismissed because they are not state actors, and the plaintiffs have alleged no facts that could reasonably lead the Court to infer that Haney or Project Harmony acted under color of state law. *See*, filing 18 at 6; 22 at 4. Haney also argues that plaintiffs cannot state a plausible claim that she violated their constitutional rights, while Project

Harmony argues that to the extent that Haney did violate the plaintiffs' constitutional rights, Project Harmony cannot be held liable for those violations. Filing 18 at 10; 22 at 8.

Section 1983 allows plaintiffs to bring claims only against persons who violate their constitutional rights under color of state law. § 1983. A private actor can be considered to act under color of state law "if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

This "close nexus" exists where the private party is "'a willful participant in joint activity with the State' in denying a plaintiff's constitutional rights." *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 536 (8th Cir. 2014) (quoting *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005)). Thus, to survive a motion to dismiss, a "plaintiff must plausibly allege 'a mutual understanding, or a meeting of the minds, between the private party and the state actor.'" *Id.* In doing so, the plaintiff must allege something more than "multiple contacts" between the private party and the state; rather, she must plead "specific facts plausibly connecting" the alleged concerted action to the alleged violation. *Id.*

Here, the plaintiffs alleges that Project Harmony is a non-profit corporation, and that Haney is Project Harmony's employee. Filing 1-1 at 3. Thus, both are private parties. The plaintiffs further allege that all of the defendants "act[ed] in concert," but fail to make any more specific allegations that there was a meeting of the minds between the state and Haney or Project Harmony. *See* filing 1-1 at 8. Because the Court is unable to draw the reasonable inference that Haney and Project Harmony acted under color of state law, the § 1983 claims against Haney and Project Harmony are dismissed. *See Iqbal,* 556 U.S. at 678. However, Medrano Cambara is granted leave to replead her claims with more specificity. The Court does not reach Haney's and Project Harmony's additional arguments with respect to § 1983.

(c) <u>Negligence – Haney</u>

The plaintiffs have alleged that Haney was negligent in forming her medical opinions as to Brianna Medrano's cause of death, *see* filing 1-1 at 6, and that, as a result, Medrano Cambara was subjected to wrongful investigation and prosecution. *See* filing 1-1 at 7. Haney argues that Nebraska does not recognize a negligence claim against a private party for bringing about an individual's prosecution without exercising due care. Filing 18 at 12.

11

Under Nebraska law, a private citizen is not liable for a prosecutor's actions "so long as any ensuing prosecution is left entirely to the officials' discretion.*" McKinney v. Okoye*, 842 N.W.2d 581, 592 (Neb. 2014). However, "a prosecution is not considered the result of the prosecuting authorities' independent discretion if the informant either (1) directs or counsels officials in such a way so as to actively persuade and induce the officers' decision or (2) knows that the information provided is false or misleading." *Id.*

Here, plaintiffs have implied that Haney provided information either to police or prosecutors. *See* filing 1-1 at 6. However, they have not pled any facts that could plausibly support an inference either that Haney provided this information knowing it was false, or that she pressured officials into prosecuting Medrano Cambara. Thus, the Court dismisses the plaintiffs' negligence claims against Haney. However, plaintiffs are granted leave to replead this claim with greater particularity.

(d) <u>Negligence – Project Harmony</u>

Project Harmony argues that the plaintiffs' negligence claims should be dismissed against Project Harmony as well. Plaintiffs' negligence claims against Project Harmony are based on its alleged negligent supervision and training of Haney. Filing 1-1 at 6. Project Harmony argues that because Haney cannot be held liable for negligence under Nebraska law, it cannot be held liable for her allegedly negligent actions either. Filing 22 at 12– 13.

Under Nebraska law, "for the doctrine of respondeat superior to apply, an employee must be liable for a tort committed in the scope of his employment. Likewise, an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." *Schieffer v. Catholic Archdiocese of Omaha*, 508 N.W.2d 907, 913 (Neb. 1993). In other words, an employer can only be liable for the negligence of its employee if the employee is herself liable as well.

As previously discussed, the Court has dismissed plaintiffs' negligence claims against Haney. Thus, plaintiffs' negligence claims against Project Harmony must be dismissed as well. However, plaintiffs are granted leave to replead these claims with greater particularity.

IT IS ORDERED:

1. The County Defendants' and City Defendants' motions to dismiss are granted in part and denied in part. Specifically,

    a. All the plaintiffs' claims against the County Attorneys' Office and the Omaha Police Department are dismissed.

    b. The plaintiffs' negligence claims against all City and County Defendants are dismissed.

    c. The § 1983 claims of Cambara Cambara, individually and on behalf of Angie Cambara Medrano and Diana Cambara Medrano, are dismissed.

    d. The plaintiffs' § 1983 claims are dismissed with respect to alleged violations of the rights of Fifth Amendment due process, Sixth Amendment speedy trial, Eighth Amendment cruel and unusual punishment, and Fourteenth Amendment disclosure of exculpatory information. Medrano Cambara may still pursue her § 1983 claims with respect to other alleged constitutional violations.

2. Haney's and Project Harmony's motions to dismiss are granted. Specifically,

    a. The plaintiffs' § 1983 claims against Haney and Project Harmony are dismissed. However, the plaintiffs are granted leave to replead these claims with greater particularity.

    b. The plaintiffs' negligence claims against Haney and Project Harmony are dismissed. However, the plaintiffs are granted leave to replead these claims with greater particularity.

3. The plaintiff's amended complaint, if any, shall be filed on or before October 22, 2015.

Dated this 30th day of September, 2015.

BY THE COURT:

John M. Gerrard
United States District Judge