IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KENY MEDRANO CAMBARA, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO. 8:14 CV 00260 |
| | ) | |
| v. | ) | **BRIEF IN SUPPORT OF** |
| | ) | **DOUGLAS COUNTY'S** |
| AMBER SCHLOTE, et al, | ) | **MOTION FOR SANCTIONS** |
| | ) | |
| Defendants. | ) | |
| | ) | |

For more than four (4) years, Plaintiff has accused Douglas County of fabricating evidence, omitting exculpatory information from investigative reports, and ignoring and failing to disclose exculpatory information. On September 27, 2017, Douglas County served Interrogatory Nos. 10-13 to determine each item of evidence that was allegedly fabricated, and the person(s) from Douglas County who fabricated said evidence as well as to determine each item of exculpatory information that was allegedly suppressed, and the person(s) from Douglas County who suppressed said information. Despite having 196 days to answer Douglas County's discovery, Plaintiff failed to provide specific information responsive to these interrogatories in violation of this Court's order to do so. For that reason, this Court should sanction Plaintiff pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii) by striking allegations in her pleadings that Douglas County fabricated evidence and suppressed exculpatory information.

## FACTS

In the Second Amended Complaint ("SAC") dated October 31, 2016, Plaintiff Keny Medrano Cambara pled:

- "…Those persons and organizations, together, determined at a relatively early stage that Medrano-Cambara was guilty of a crime in the death of Brianna Medrano, and thereafter prosecuted the case against Medrano-Cambara, by a) actively suppressing many matters

1

of fact which tended to indicate Medrano-Cambara's innocence, and, b) actively adding facts intended to support Medrano-Cambara's guilt… Any matter of fact which tended to show innocence, or tended to show further investigation was necessary, was suppressed, omitted, and systematically not made the subject of a report, in violation of standard procedures…" SAC ¶28
- "Judge Ashford, for example, noted several of those instances where matters of fact which may have tended to show innocence, or tended to require further investigation (Judge Ashford's comments regarding viewing the supposed scene of the incident, and the canvassing for witnesses) were suppressed, omitted, and systematically ignored, and were not included in any report, contrary to written policy." SAC ¶29
- "Defendants Schlote, Worley, Hernandez, Yanez, the City of Omaha, Kleine and Douglas County were negligent in the following respects… (c) failing to make reports of exculpatory information;…(e) failing to consider material and exculpatory information as it became available throughout the investigation and prosecution…" SAC ¶35(c)&(e); *see also* Am. Compl. ¶24(c)&(e) and Compl. ¶24(c)&(e)
- "Defendants, individually and acting in concert, deliberately and with reckless disregard for the truth, fabricated and manufactured evidence they knew, or reasonably should have known, was false, fraudulent, and profoundly lacking in reliability." SAC ¶46; *see also* Am. Compl. ¶35 and Compl. ¶34
- "Defendants omitted exculpatory information from investigative reports, failed to follow investigative and prosecutorial protocol in order to discover and present the truth, refused to consider all available information, and/or even provided false testimony under oath." SAC ¶46; *see also* Am. Compl. ¶35 and Compl. ¶34
- "To bring about Plaintiff Keny Medrano Cambara's arrest and prosecution for the death of Brianna Medrano, Defendants ignored and failed to disclose exculpatory information as it became available and fabricated evidence that was demonstrably unreliable, misleading, and false…" SAC ¶50; *see also* Am. Compl. ¶39 and Compl. ¶35
- "…Defendants also omitted information they did have regarding those observations from the probable cause affidavit and police reports." SAC ¶53; *see also* Am. Compl. ¶42
- "Defendants disregarded and omitted material inconsistencies in reports by certain witnesses, including Adriana Medrano, from the probable cause affidavit and police reports." SAC ¶54; *see also* Am. Compl. ¶43
- "The policies, practices, and customs [of Douglas County and City of Omaha] include, but are not limited to the following… (e) falsifying, fabricating, and concealing evidence without regard to whether policies, practices, and customs might result in the conviction of persons who are actually innocent." SAC ¶65(e); *see also* Am. Compl. ¶54(e) and Compl. ¶41(e)

Plaintiff repeatedly asserted that Douglas County (1) fabricated and manufactured evidence it knew, or should have known, was false, fraudulent and lacking in reliability, (2) omitted exculpatory information from investigative reports, and (3) ignored and failed to disclose

exculpatory information as it became available, so Douglas County submitted the following interrogatories to Plaintiff on September 27, 2017:

- **Interrogatory No. 10:** Identify each item of exculpatory information Plaintiff alleges was omitted from investigative reports, and the person(s) from Douglas County who Plaintiff claims "omitted exculpatory information from investigative reports." (See Second Amended Complaint, ¶46)
- **Interrogatory No. 11:** Identify each item of exculpatory information Plaintiff alleges was ignored, and the person(s) from Douglas County who Plaintiff claims "ignored exculpatory information as it became available." (See Second Amended Complaint, ¶50)
- **Interrogatory No. 12:** Identify each item of exculpatory information Plaintiff alleges was not disclosed, and the person(s) from Douglas County who Plaintiff claims "failed to disclose exculpatory information as it became available." (See Second Amended Complaint, ¶50)
- **Interrogatory No. 13:** Identify each item of evidence Plaintiff contends Douglas County fabricated, and the person(s) from Douglas County who Plaintiff claims "fabricated evidence that was demonstrably unreliable, misleading, and false." (See Second Amended Complaint, ¶50)

Plaintiff provided unverified responses to Douglas County's discovery on December 6, 2017 (a true and correct copy of which is attached hereto as Exhibit A). In response to these interrogatories, Plaintiff originally answered in December 2017 that "[t]he material facts are identified above, in response to Interrogatory No. 2." Exhibit A at pp. 10-11. On its face, Plaintiff's answer to Douglas County's Interrogatory No. 2 appears to provide several pages of information. *See* Exhibit A at pp. 2-9. However, closer review revealed that her answer to Interrogatory No. 2 was merely a re-ordering of <u>verbatim</u> allegations from the SAC. Douglas County explained this in a letter to Plaintiff mailed on January 12, 2018 (a true and correct copy of which is attached hereto as Exhibit B), and warned her that cutting and pasting her complaint into interrogatory answers did not provide Douglas County any information regarding the factual bases of her accusations. *See* Exhibit B at pp. 3-5 (showing where each and every statement of Plaintiff's interrogatory answer could be found in the SAC). Douglas County stated that her lack of specific responses was hampering its ability to defend the lawsuit and that it could not address

whatever specific facts she was relying upon when the only material provided was a re-recitation of the short and plain statement of the claims. Douglas County requested that Plaintiff supplement her answers. On February 6, 2018, in response to questions from Plaintiff about sufficiency of supplemental answers, Douglas County emailed Plaintiff that with respect to Interrogatory Nos. 10-13, it would not acquiesce to general descriptions or broad categorizations of information in lieu of identifying/listing particular items of evidence.

On February 11, 2018, after the first phone call with the Court to discuss case progression and just days before the second follow-up call, Plaintiff produced unverified supplemental answers to Interrogatory Nos. 10-13 (a true and correct copy of which is attached hereto as Exhibit C). In response to Interrogatory No. 10, asking Plaintiff to identify each item of exculpatory information Plaintiff alleges was omitted from investigative reports and the persons from Douglas County who omitted exculpatory information from said reports, Plaintiff answered:

> "A deposition was taken of Schlote, on February 13, 2012, during which the witness identified several material omissions, including: a) Brianna's history of vomiting and follow-up of same; b) inconsistencies in the interview and follow-up statements of Adriana Martin; c) information regarding events at a soccer game attended by Brianna prior to July 8; d) Brianna's symptoms – of concussion – following the soccer game referred to; e) limiting of the event timeline with regard to Brianna's activities, to the date of July 8; and, f) information regarding certain unnamed other persons who supposedly "came forward" with information regarding Plaintiff's involvement in other, similar incidents. The County's attorneys took no action to correct such omissions. Schlote, during her investigation, made her omissions, while acting under and pursuant to a co-operative agreement/protocol, with Douglas County, vis-à-vis the protocol agreement identified above, in Plaintiff's response to Interrogatory No. 1, response subparts a and b."

Exhibit C at pp. 13-14. Plaintiff re-incorporated this answer in her answers to Interrogatory Nos. 11-13. *See* Exhibit C at p. 14. In her answer to Interrogatory No. 13, asking Plaintiff to identify

4

each item of evidence that was fabricated and who from Douglas County fabricated evidence, she added,

> "More particularly, Schlote testified and related that Roffman, who conducted the autopsy, had determined the manner of death of Brianna to be non-accidental; and testified further that other persons had "come forward" with information regarding similar conduct by the Plaintiff, both of which instances were tacitly approved by the County's attorneys and/or uncorrected. Again, as to Schlote, herself, her role was played out under the terms of the protocol and agreement identified above, in response to Interrogatory No. 1."

Exhibit C at p. 14. During the telephonic conference on February 13, 2018, this Court instructed Plaintiff to provide more detailed information identifying the evidence responsive to these Interrogatories. That did not happen.

During a follow-up telephonic conference on March 21, 2018, this Court ordered Plaintiff to provide supplementary responses with detailed information identifying the responsive evidence and warned that if she did not provide a list of evidence responsive to the interrogatories by April 11, 2018, she would be barred from introducing such evidence in future proceedings. On April 11, 2018, Plaintiff provided unverified supplemental answers to Interrogatory Nos. 10-13 (a true and correct copy of which is attached hereto as Exhibit D). In response to unverified Interrogatory No. 10, asking Plaintiff to identify each item of exculpatory information she alleges was omitted from investigative reports and the persons from Douglas County who omitted exculpatory information from said reports, Plaintiff incorporated her former answers, adding only the following:

> "As a preface, the Plaintiff was, in March of 2012, found to be not guilty of the crime with which she had been charged. That finding was announced and made by Judge Ashford, who has been previously identified. In deciding the Plaintiff's case, Judge Ashford was generally critical of the manner in which the purported "case" against the Plaintiff was investigated, and in particular his criticisms boiled down to the failure of the Defendants to be thorough in conducting their investigations. Defendants, in a phrase, failed to "follow the evidence". Those failures are the crux, or are at the heart of the Plaintiff's complaints. The

5

> foregoing context need be kept in mind when identifying "each item" of information that was "omitted", or "ignored", or "not disclosed", or, for that matter, "fabricated". When a matter is not fully and fairly investigated, when both set practice – such as a protocol – and common sense (in Judge Ashford's terms) are ignored, **many such "items" are not known and, in many instances, cannot be.** When there is a failure to investigate, those "items" which investigation would provide, are, in fact, "omitted", and "ignored", and so forth.
>
> As to the identification of "the person(s) from Douglas County who Plaintiff claims" made omissions, ignored information, failed to disclose information, or fabricated information, they include:
>
> Officers Hernandez, Worley, and Yanez, similarly failed in their investigations, again, while acting under the same protocol, to which the Omaha Police Department was a party.
>
> Project Harmony – implicating Dr. Suzanne Haney, as well as those who participated with her as a "team" – failed in their investigations and analyses of the cause, mechanism, and manner of death of Brianna. It appears that even Dr. Thomas Hejkal was something of a "participant" under the protocol, perhaps by way of something called "CAT", which appears to be an acronym for some known as the "child advocacy team". It appears, for example, that each of Haney and Hejkal were overly zealous to reach conclusions regarding the cause, mechanism, and manner of death of Brianna, each extending opinions based upon flawed facts and analyses."

Exhibit D at pp. 13-14 (emphasis added). Plaintiff re-incorporated her supplemented answer to Interrogatory No. 10 in response to Interrogatory Nos. 11-13. *See* Exhibit D at pp. 14-15. After admitting that "many" items of evidence responsive to Douglas County's Interrogatory Nos. 10-13 "are not known and, in many instances, cannot be," Plaintiff noticeably failed to list specific evidence responsive to any of these interrogatories.

## ARGUMENT

Conclusory statements and generalities are not sufficient responses to Douglas County's Interrogatory Nos. 10-13. Discovery is intended to make trial "less of a game of the blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Torre v. Northrop Grumman Systems Corp.*, 8:13CV319, 2016 WL 323593, *2 (D.Neb.

Jan. 26, 2016) (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683 (1958)). Plaintiff's failure to specifically answer Douglas County's straight-forward Interrogatory Nos. 10-13 after being ordered to do so by the Court should result in her inability to proceed under these theories. Douglas County should not be subjected to defending itself by reading Plaintiff's discovery answers in light of Judge Ashford's comments[1] and speculate how Plaintiff interprets those comments in order to independently discern what exact items of evidence Plaintiff thinks were fabricated and what exact exculpatory information Plaintiff thinks was suppressed.

Furthermore, Judge Ashford's comments during his announcement of the verdict were overall far more favorable to investigators and to the prosecution than Plaintiff has led this Court to believe via her use of exceedingly select citations carefully culled from his comments. Attached hereto as Exhibit E is a true and correct copy of the entire transcript of Judge Ashford's verdict announcement. *See* p. 5 (stating that OPD has one of the best reputations in the United States and is an outstanding organization), p. 9 (stating prosecutors for the State of Nebraska are extremely ethical attorneys), p. 11 (stating Don Kleine is a fabulous county attorney who knows what he is doing), p. 14 (stating he highly respects the County Attorney's Office, the police, and the physicians in the community, especially the physicians that testified in this case), pp. 15-21 (stating that the doctors and retained expert witnesses had differing medical opinions, <u>but he did not think that they lied or tried to shade the truth, but simply had opposing opinions</u>) (emphasis added), pp. 23-27 (discussing the OPD officers' techniques and interview of Plaintiff, stating it was good police work, good detective work), p. 30 (<u>stating that the State was right to bring the</u>

---

[1] Allegations about Defendant Schlote's false testimony during the preliminary hearing (SAC ¶56; Am. Compl. ¶45) are separate from Plaintiff's allegations about fabricated evidence and suppressed exculpatory information from investigative reports and the probable cause affidavit (SAC ¶¶46, 50, 54, 65(e); Am. Compl. ¶¶35, 39, 43, 54(e);  Compl. ¶¶34, 35, 41(e)) so any comments by Judge Ashford about said testimony are not relevant to Douglas County's Interrogatory Nos. 10-13.

charge against Plaintiff and that it had appropriate information to file) (emphasis added), and p. 34 (stating that the State had enough evidence to prevail at a civil case) (emphasis added). This shows that reading Plaintiff's allegations through Judge Ashford's comments as a whole (not just those selected by Plaintiff) would further increase the burden on Douglas County to discern what items of evidence Plaintiff thinks were fabricated and what information was suppressed as Judge Ashford clearly stated that he thought there was enough evidence to file charges against Plaintiff and that the State had enough evidence to prove its case by a preponderance of the evidence, just not enough for the beyond a reasonable doubt standard.

Plaintiff cannot rely on select comments from Judge Ashford as a "get out of jail" free card to ignore her discovery obligations, particularly when she does not point to any part of Judge Ashford's comments in which he himself specifically stated what exactly was fabricated or suppressed. She did not comply with this Court's order to answer Douglas County's Interrogatory Nos. 10-13 with specificity. Therefore, this Court should strike Plaintiff's pleadings identified in the "Facts" section above regarding evidence fabrication and suppression of evidence pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii).

## I. THIS COURT SHOULD STRIKE ALL PLEADINGS RELATED TO FABRICATION OF EVIDENCE.

Plaintiff has continuously accused Douglas County of fabricating evidence. *See* SAC ¶46, Am. Compl. ¶35, and Compl. ¶34 (alleging Douglas County fabricated and manufactured evidence); SAC ¶50, Am. Compl. ¶39, Compl. ¶35 (alleging Douglas County fabricated evidence that was demonstrably unreliable, misleading, and false); and SAC ¶65(e), Am. Compl. ¶54(e), and Compl. ¶41(e) (alleging Douglas County has policies, practices, and customs of falsifying, fabricating, and concealing evidence). The word "fabricate" is defined as "to frame, construct, or build; to prepare (something) according to standard or prepared specifications; to

8

form by labor and art, to produce or manufacture; to invent, forge, or devise falsely." Black's Law Dictionary (10th ed. 2014).[2] Fabricating evidence is an intentional action.[3] Eighth Circuit authority is clear that a "fabrication of evidence" claim requires proof of deliberate fabrication – mere negligence does not amount to a fabrication of evidence. *Riddle v. Riepe*, 866 F.3d 943, 947-48 (8th Cir. 2017); *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012). It is a crime under Neb. Rev. Stat. § 28-922 (captioned "Tampering with physical evidence; penalty; physical evidence, defined"). To accuse someone of this criminal action is no small thing and there must be proof to support such allegations. If some item of evidence is fabricated, that item is identifiable. For Plaintiff to admit that "such 'items' are not known and, in many instances, cannot be" (Exhibit D at p. 14) absolutely stonewalls any discovery of proof of deliberate fabrication in order to frame her, and strongly suggests that she faults, at worst, mere negligence not amounting to a fabrication of evidence.

At this point in time, more than four (4) years after filing her civil lawsuit and more than six (6) years after the conclusion of her criminal prosecution, it is Plaintiff's duty when asked to identify what items of evidence were fabricated by Douglas County. Douglas County's request

---

[2] *See also* "fabrication," defined as "false information invented to deceive others; manufacture;" and "fabricated evidence," defined as "false or deceitful evidence that is unlawfully created, usu. after the relevant event, in an attempt to achieve or avoid liability or conviction." Black's Law Dictionary (10th ed. 2014).

[3] Plaintiff herself describes Douglas County's actions when fabricating and manufacturing evidence as acting deliberately and with reckless disregard for the truth. SAC ¶46, Am. Compl. ¶35, and Compl. ¶34. Deliberate is defined as "intentional, premeditated, fully considered; unimpulsive, slow in deciding." Black's Law Dictionary (10th ed. 2014). Reckless disregard is defined as "conscious indifference to the consequences of an act; the intentional commission of a harmful act or failure to do a required act when the actor knows or has reason to know of facts that would lead a reasonable person to realize that the actor's conduct both creates an unreasonable risk of harm to someone and involves a high degree of probability that substantial harm will result." *Id.*; *see also Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (mere negligence will not support a conclusion of a defendant's callous disregard or reckless indifference).

9

that Plaintiff do so is not inconsistent with her burden under the discovery rules or Eighth Circuit authority. The fact that she failed to do so by April 11, 2018, as ordered by this Court justifies barring her from proceeding under this theory.

## II. THIS COURT SHOULD STRIKE ALL PLEADINGS RELATED TO SUPPRESSED EXCULPATORY INFORMATION.

For more than four (4) years, Plaintiff has accused Douglas County of suppressing exculpatory information. *See* SAC ¶28 (alleging facts tending to show Plaintiff's innocence or that further investigation was needed were suppressed, omitted, and systematically not made the subject of a report); SAC ¶46, Am. Compl. ¶35, Compl. ¶34 (alleging Douglas County omitted exculpatory information from investigative reports); SAC ¶50, Am. Compl. ¶39, Compl. ¶35 (alleging Douglas County ignored and failed to disclose exculpatory information as it became available); SAC ¶53, Am. Compl. ¶42 (alleging Douglas County omitted information it had from the probable cause affidavit and police reports); and SAC ¶54, Am. Compl. ¶43 (alleging Douglas County omitted unidentified/undescribed material inconsistencies in reports by certain witnesses from the probable cause affidavit and police reports). When asked to identify the suppressed information and who did it, however, Plaintiff could not. The answers she provided fails to comply with this Court's order to provide responsive answers to Douglas County by April 11, 2018, in three ways.

First, the information she identified in her answers are not responsive to Douglas County's Interrogatory Nos. 10-12 because this information was not suppressed. The word "suppress" is defined as "to put a stop to, put down, or prohibit; to prevent (something) from being seen, heard, known, or discussed." Black's Law Dictionary (10th ed. 2014). The government does not suppress evidence by failing to disclose evidence to which the defendant had access through other channels. *United States v. Zuazo*, 243 F.3d 428, 431 (8th Cir. 2001);

10

*see also United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002), *cert. denied*, 537 U.S. 1049, 123 S. Ct. 611, 154 L. Ed. 2d 524 (2002) (evidence "is deemed 'suppressed' if (1) the prosecution failed to disclose the evidence before it was too late for the defendant to make use of the evidence, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence."). It is a misnomer to say information about the soccer game and that Brianna had bumped her head and vomited was suppressed when Judge Ashford discussed these facts in his verdict. *See* Exhibit E at pp. 12, 18-19, 24, 28-29 (discussing a soccer game, Brianna bumping her head a day or two before, Brianna vomiting). The fact that Plaintiff had the information identified in her discovery answers in time to use effectively at her criminal trial proves that it was not suppressed. *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005) ("due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial"); *O'Hara*, *supra*, 301 F.3d at 569. Therefore, Plaintiff's discovery answers were not responsive to Douglas County's Interrogatory Nos. 10-12 asking what exculpatory information was suppressed. If there is other exculpatory information that was allegedly omitted from investigative reports, ignored, and not disclosed, Plaintiff has failed to identify it in her discovery answers despite having 196 days to do so.

Second, closer review of her supplemented answers to Douglas County's Interrogatory Nos. 10-12 show that she is merely restating information already provided in the SAC without any more detail. *Compare* SAC ¶¶39, 53, 54 and Am. Compl. ¶¶28, 42, 43 (discussing a soccer game and Brianna vomiting as well as unspecified/undescribed statements by Adriana Medrano alleged omitted from reports) *to* Exhibit D at pp. 13-15, Plaintiff's unverified second supplemented answers to Interrogatory Nos. 10-12. Plaintiff does not provide any new information about the soccer game or provide a description of Adriana Medrano's statements

11

that does not appear in her Fed. R. Civ. P. 8 short and plain statement. Plaintiff does not say what information Adriana Medrano allegedly had that was omitted from reports or identify what the material inconsistencies were between Adriana Medrano's information and the investigative reports. *Compare* SAC ¶54 and Am. Compl. ¶43 *to* Exhibit D at pp. 13-15, Plaintiff's unverified second supplemented answers to Interrogatory Nos. 10-12. Providing such a description would be responsive to Douglas County's Interrogatory Nos. 10-12, but just saying information was omitted is the same as her assertion in the pleading. She also does not say what was ignored and omitted from the probable cause affidavit filed by Defendant Schlote (an OPD officer who is not an employee of Douglas County) in either the SAC or her interrogatory answers. She has provided no more facts in discovery than she did at the pleading stage, hindering Douglas County's ability to defend itself.

Third, Plaintiff's assertion that this information can be found in Defendant Schlote's deposition from the criminal prosecution is not enough – particularly where she does not even provide any page citations to the 55-page transcript. *See* Exhibit D at p. 14. "Providing or identifying records or documents form which an answer can be derived is typically not an appropriate response for contention interrogatories." *Torre*, *supra*, 2016 WL 323593, *2 (citing *U.S. S.E.C. v. Elfindepan, S.A.*, 206 F.R.D 574, 577 n.5 (M.D.N.C. 2002) (holding "[o]nly plaintiff can identify its own contentions and the burden on defendants to try and divine plaintiff's contentions from documents obviously imposes a greatly unequal burden on defendants.")). Only Plaintiff can explain how she interprets the information allegedly omitted from reports, ignored, and was not disclosed. Forcing Douglas County "to examine and decipher the documents and then to speculate how Plaintiff interprets each event imposes a burden on Defendant that is inconsistent with Rule 33(d)." *Id.* Douglas County's request that Plaintiff

12

describe the alleged exculpatory evidence giving rise to her claims is fully consistent with her burden, yet she has failed to answer the request despite ample time for doing so.

### III. PLAINTIFF FAILS TO SPECIFICALLY IDENTIFY ANY DOUGLAS COUNTY ACTOR WHO FABRICATED EVIDENCE OR SUPPRESSED EXCULPATORY INFORMATION AND THESE ALLEGATIONS AGAINST DOUGLAS COUNTY SHOULD BE STRICKEN.

Plaintiff admits that, at the time, Officers Schlote, Hernandez, Worley, and Yanez were members of OPD and employees of City of Omaha. SAC ¶¶4-7; Am. Compl. ¶¶4-7; Compl. ¶¶4-7. Dr. Haney was an employee of Project Harmony. Dr. Hejkal was an employee of the University of Nebraska Medical Center, Department of Ophthalmology. None of these were Douglas County employees (let alone policymakers) so identifying them in response to interrogatories asking Plaintiff to identify the person(s) from Douglas County who allegedly fabricated evidence and suppressed exculpatory information is simply not responsive. The only "person(s)" actually from Douglas County who Plaintiff identifies are the "County's attorneys." She does not name who these attorneys are so Douglas County is no closer to identifying whether any of these actors were employees with actual policy-making authority. This impacts Douglas County's ability to defend this lawsuit because municipal "liability attaches only where the decision-maker possesses final authority to establish municipal policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *see also McGautha v. Jackson County, Mo. Collections Dept.*, 36 F.3d 53, 56 (8th Cir. 1994) (although municipal liability for violating constitutional rights may arise from an act of a policymaker, that act must come from one in authoritative policy-making position and represent official policy of municipality; thus, a subordinate's departure from official policies are not the act of the municipality). It is Plaintiff's duty to identify which attorney from Douglas County violated Plaintiff's rights when asked about fabricating and suppressing evidence. The fact that she

13

ignored this duty despite having 196 days to answer Douglas County's Interrogatory Nos. 10-13 with specificity as ordered by this Court justifies striking these allegations against Douglas County.

## CONCLUSION

Plaintiff's pleadings identified in the "Facts" section above regarding evidence fabrication and suppression of evidence should be stricken from the SAC pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii). Plaintiff's answers to Interrogatory Nos. 10-13 leave Douglas County at the very same place it was before it ever sent any discovery requests to Plaintiff. Her circular responses did not add any of the substance Douglas County sought in its discovery because she did not identify each item of evidence that was fabricated, or each item of exculpatory information that was actually suppressed. She did not identify the person(s) from Douglas County who allegedly committed these acts. The Court ordered her to provide this information to Douglas County by April 11, 2018, and she failed to do so. Therefore, striking these pleadings is appropriate under Fed. R. Civ. P. 37(b)(2)(A)(iii).

Dated this 17th day of April, 2018.

DOUGLAS COUNTY, NEBRASKA, Defendant.

DONALD W. KLEINE,
Douglas County Attorney.

BY: /s/ Meghan M. Bothe
Timothy K. Dolan #20978
Meghan M. Bothe #25208
Deputy County Attorneys
909 Civic Center
Omaha, NE 68183
T: (402) 444-7622
F: (402) 444-6817
tim.dolan@douglascounty-ne.gov
meghan.bothe@douglascounty-ne.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2018, I electronically filed the foregoing Brief in Support of Douglas County's Motion for Sanctions with the Clerk of the Court using the NextGen CM/ECF system, which will send notification of such filing to the following:

    Terry K. Barber
    Joshua D. Barber
    Barber & Barber, P.C., L.L.O.
    300 N. 44th Street, Suite 205
    P.O. Box 4555
    Lincoln, NE 68503

    Ryan J. Wiesen
    City of Omaha
    1819 Farnam Street, Suite 804
    Omaha, NE 68183

    Susan K. Sapp
    Megan S. Wright
    Cline Williams Wright Johnson & Oldfather, L.L.P.
    12910 Pierce Street, Suite 200
    Omaha, NE 68144.

                                              /s/ Meghan M. Bothe