IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KENY MEDRANO CAMBARA, et al.,

        Plaintiffs,                Case No. 8:14-CV-260

vs.

AMBER SCHLOTE, et al.,

        Defendants.

ANSWERS OF PLAINTIFF KENY MEDRANO CAMBARA, TO COUNTY DEFENDANTS' INTERROGATORIES TO THE PLAINTIFF

COMES NOW, Keny Medrano Cambara, and her counsel, and for their answers to the foregoing interrogatories state as follows:

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify any official policy (or policies) of Douglas County which Plaintiff contends caused the damages alleged in her Second Amended Complaint.

**ANSWER:** I, Keny Medrano Cambara, have insufficient education and training to make a personal response to this interrogatory, and must rely on my counsel in order to make an answer. The balance of this answer is the answer of my counsel.

The Second Amended Complaint herein makes reference to, "applicable standard policies, procedures and protocols of . . . Douglas County . . . "; (*see, e.g.,* Second Amended Complaint, ¶ 19) and does not set forth a claim or claims contending that any such "applicable standard policies, procedures and protocols" caused the alleged damages. What is alleged is that the Plaintiff was caused damage because of the Defendants' "fail[ure] to follow" those "applicable standard policies, procedures and protocols". (*see, e.g.,* Second Amended Complaint, ¶ 20) The Second Amended Complaint also refers to "applicable standard policies, procedures and protocols" as being, at least in part, "published policies". (*see, e.g.,* Second Amended Complaint, ¶ 30) The operative Complaint also makes allegations regarding certain "policies and practices"; (*Ibid.,* ¶ 62) and "policies, practices, and customs"; (*Ibid.,* ¶ 64) none of which are alleged to be "published policies", in the conventional sense.

The failure(s) to follow "applicable standard policies, procedures and protocols", and the likely unwritten "policies, practices, and customs" of which complaint(s) are made, are described in the Second Amended Complaint, at paragraph 28, 29, 35, 36, 38, and 65.

1

EXHIBIT A

**INTERROGATORY NO. 2:**  Identify each and every material fact which Plaintiff contends establishes a causal connection between the official policy (or policies) responsive to Interrogatory No. 1, above, and the damages Plaintiff alleges in her Second Amended Complaint.

**ANSWER:**  I, Keny Medrano Cambara, have insufficient education and training to make a personal response to this interrogatory, and must rely on my counsel in order to make an answer.  The balance of this answer is the answer of my counsel.

The predicate facts which establish proximate cause in this action are separately stated in the Second Amended Complaint, ¶¶ 15-32, 35, 36, 38, 39, 41, 46, 50-56, 62, 64, 65, and 67; and as testified in the eleven day trial of Keny Medrano Cambara, which is recorded in the stenographic tapes maintained by Judge Ashford's court reporter, Shelly (Chapman) Stratman, which trial concluded on March 9, 2012.

In particular, the material facts, some being historical and some being ultimate, are:

1.  On or about July 10, 2010, Brianna Medrano passed away.

2.  Between July 9, 2010 and March 9, 2012, Defendants Schlote, Hernandez, Yanez, Worthy, City of Omaha, Douglas County, Haney, and Project Harmony conducted an investigation, arrest and prosecution of Plaintiff Keny Medrano Cambara for the death of Brianna Medrano.

3.  Plaintiff Keny Medrano Cambara was arrested on or about February 18, 2011, and charged with the crime of Child Abuse Resulting in Death.

4.  The investigation, arrest and prosecution culminated in the trial of Keny Medrano Cambara which took place in late February and early March of 2012, in the case styled as *State of Nebraska vs. Keny Y. Medrano-Cambara,* CR11-4903, in the District Court of Douglas County, Nebraska.

5.  Plaintiff Keny Medrano Cambara was acquitted on or about March 9, 2012.

6.  In conducting said investigation and arrest the Defendants failed to follow the applicable standard policies, procedures and protocols of the Omaha Police Department, Douglas County, and Project Harmony, as was established at her trial, and as were the conclusions of Judge Ashford.

7.  In conducting said prosecution, the Defendants failed to follow the applicable standard policies, procedures and protocols of the Omaha Police Department, Douglas County, and Project Harmony, as was established at Medrano's trial, and as were the conclusions of Judge Ashford.

8. Defendants had, and, in particular, owed Plaintiffs, as individuals and residents of Douglas County, Nebraska, a duty to carefully follow all applicable laws and policies, procedures and protocols of the City of Omaha, Omaha Police Department, Douglas County Attorney's Office, Douglas County, and Project Harmony with respect to said investigation and prosecution, as was established at Medrano's trial, and as was found by Judge Ashford.

9. On July 9, 2010, Schlote was assigned and made lead investigator regarding the matter of the injury and subsequent death of Brianna Medrano.

10. Lance Worley was Schlote's supervising sargent, and supervised Schlote's investigation, and actively participated in it.

11. Hernandez and Yanez were Spanish-speaking Omaha police officers, both of whom actively participated in the same investigation, and, in particular, were active in interviewing and/or interrogating Spanish-speaking witnesses and/or persons of interest in the matter.

12. Schlote authored, on or about February 17, 2011, an "Affidavit of Complaining Witness", wherein she recited certain particulars of her investigation, stated "there are grounds for issuance of an arrest warrant' for Keny Y. Medrano-Cambara; and that "there is reasonable cause to believe the crime of Child Abuse Resulting in Death was committed and that the said Defendant committed the said crime."

13. Schlote was the sole witness, on or about March 15, 2011, at the preliminary hearing conducted in the matter of Medrano-Cambara, in the Douglas County, Nebraska, County Court.

14. Based upon Schlote's affidavit, Medrano-Cambara was arrested and jailed.

15. Based upon that same affidavit and Schlote's testimony at the preliminary hearing, Medrano-Cambara was held, continuously, in custody, until she was allowed bail and released from custody on or about February 23, 2012, notwithstanding any notations which may appear in the court records of Case No. CR 11-4903, in the office of the Clerk of the District Court for Douglas County, Nebraska.

16. Project Harmony, Dr. Haney, Schlote, Worley, Hernandez, Yanez, Kleine, the County (generally), and the City (generally), comprised, at all times and by their own description, a "team" or "prosecution team" in the matter of Medrano-Cambara, and in the cases of others similarly situated.

17. Those persons, agencies, and organizations, at all times acted in consert with respect to the prosecution of Medrano-Cambara.

18. All actors had access to, and knowledge of all of the medical records, police reports, and autopsy report, all pertaining to Brianna Medrano's death, and Medrano-Cambara's prosecution.

19. Those persons, agencies, and organizations, together, determined at a relatively early stage that Medrano-Cambara was guilty of a crime in the death of Brianna Medrano, and thereafter prosecuted the case against Medrano-Cambara, by a) actively suppressing many matters of fact which tended to indicate Medrano-Cambara's innocence, and, b) actively adding facts intended to support Medrano-Cambara's guilt, including, but not limited to asserting that the physician conducting Brianna Medrano's autopsy had concluded her death was non-accidental, when in fact he had never expressed such an opinion.

20. Matters of fact which tended to show innocence, or tended to show further investigation was necessary, was suppressed, omitted, and systematically not made the subject of a report, in violation of standard procedures. Haney, for example, and while under supervision of the Defendant County, evidently suggested to Schlote that there was a coroner physician's opinion that Brianna Medrano's death was non-accidental.

21. Medrano-Cambara's trial occurred before the Honorable W. Mark Ashford, Douglas County District Judge.

22. Judge Ashford announced his decision on March 9, 2012, after trial.

23. While being as generous as he could to the "prosecution team", several of his remarks and findings amply demonstrate, and establish that of which Medrano-Cambara here complains. Pages 7 through 13, inclusive, of the transcript of Judge Ashford's decision and findings are attached and incorporated into Medrano's Second Amended Complaint.

24. In further particular as to the systematic failures in the investigation, Judge Ashford found several of those instances where matters of fact which may have tended to show innocence, or tended to require further investigation (Judge Ashford's comments regarding viewing the supposed scene of the incident, and the canvassing for witnesses) were suppressed, omitted, and systematically ignored, and were not included in any report, contrary not only to written policy, but also to common sense.

25. The actions of the "prosecution team" in the case of Medrano-Cambara appears to be contrary to the published policies of the Defendants, and certain of the actions or omissions in the case of Medrano-Cambara were done in direct violation of such published policies.

26. (At this juncture) On information and belief, based upon the events complained of in the Second Amended Complaint, and, in particular, the acts and omissions of Schlote, and other similar instances, there was at the time(s) complained of, a continuing, widespread and persistent pattern, practice, and/or custom of

unconstitutional misconduct in the prosecution of cases such as that of Medrano-Cambara, and others situated similarly to her.

27. Haney and Kleine were each actively involved in day-to-day decisions with regard to the prosecution of Medrano-Cambara, and each of Haney and Kleine were at all times routinely provided with written copies of all of the medical records, police reports, and autopsy results, and had such written copies in their possession and custody.

28. All defendants were involved in one or more face-to-face meetings with regard to the prosecution of Medrano-Cambara.

29. The collaborative effort of the Defendants was the direct and effective cause of Medrano-Cambara's incarceration of 12 months, and of the violation of Medrano-Cambara's right to due process of law.

30. Defendants Schlote, Worley, Hernandez, Yanez, the City of Omaha, Kleine and Douglas County were negligent in the following respects:
   a. Failing to canvass, interview witnesses, and otherwise properly investigate the alleged crime scene;
   b. Providing false testimony under oath at the preliminary hearing in the prosecution of Keny Medrano Cambara;
   c. Failing to make reports of exculpatory information;
   d. Failing to investigate various possible causes of the death of Brianna Medrano;
   e. Failing to consider material and exculpatory information as it became available throughout the investigation and prosecution; and,
   f. Otherwise failing to follow applicable standard policies, procedures, and protocols regarding criminal investigations, arrests, and prosecutions.

31. Defendants Hernandez, Yanez, and Worley were negligent in the following respects:
   a. Failing to canvass, interview witnesses, and otherwise properly investigate the alleged crime scene;
   b. Failing to make reports of exculpatory information so that the information was not made available to the defense in the prosecution of Keny Medrano Cambara;
   c. Failing to investigate certain possible causes of the death of Brianna Medrano;
   d. Failing to consider material and exculpatory information as it became available throughout the investigation and prosecution; and,
   e. Otherwise failing to follow applicable standard policies, procedures, and protocols regarding criminal investigations, arrests, and prosecutions.

32. Defendants Douglas County and Kleine were negligent in the following respects:

5

     a. Failing to adequately supervise the investigation of Keny Medrano Cambara for the death of Brianna Medrano;

     b. Failing to fully investigate death of Brianna Medrano;

     c. Adducing or allowing to be adduced false testimony during a criminal proceeding; and,

     d. Failing to follow the established policies, procedures and protocols of Douglas County, the Douglas County Attorney's Office, and other applicable standards in the investigation, arrest, and prosecution of Keny Medrano Cambara.

     33. Defendant Suzanne Haney, M.D. was negligent, while acting in the scope of her employment by Project Harmony, in the following respects:

     a. Failing to follow the applicable standard of care in forming, rendering and communicating medical diagnoses, conclusions, and opinions as to the cause, manner, and mechanism of death of Brianna Medrano, and as to the time of occurrence or onset of her injuries or illnesses;

     b. Forming medical diagnoses, conclusions, and opinions regarding the condition and cause of death of Brianna Medrano without a basis and without considering all available information or investigating for further information which would have been available;

     c. Failing to follow the applicable protocols, policies and procedures of Project Harmony, Douglas County, City of Omaha, Omaha Police Department, and the applicable medical standard of care, in investigating the death of Brianna Medrano and participating in the prosecution of Keny Medrano Cambara; and,

     d. Failing to consider available information and conduct a proper investigation to obtain all pertinent information regarding the cause and manner of the death of Brianna Medrano.

     34. On or about July 10, 2010, Defendant Haney, as medical director at Project Harmony, reported to Defendant Schlote that she had examined Brianna Medrano and had observed no visible trauma.

     35. Defendant Haney advised Defendant Schlote that Brianna's symptoms "would have started almost immediately after receiving the head injury". This information was misleading and encouraged and persuaded Defendant Schlote and the other Defendants to focus their investigation on more recent events and to ignore the events that occurred several days prior to Brianna Medrano's death, including without limitation, observations that the child may have fallen at a soccer game and that she had been seen vomiting. Defendant Haney should have directed or advised the other Defendants to investigate all known symptoms and possible causes, including those occurring during the several days prior to her death, and include possible falls or other accidents. On information and belief, she did not.

     36. As a direct and proximate result of the aforementioned negligence of said Defendants, Keny Medrano was subjected to prolonged interrogation, investigation,

arrest, confinement without bail, monitoring, prosecution, and trial for the death of Brianna Medrano.

37. As a further result said negligence, Plaintiffs have suffered damage, including:
    a. Physical, mental, emotional, and psychological pain and suffering;
    b. Humiliation, embarrassment, and damage to their reputation;
    c. Loss of wages, income, profits, and earning capacity;
    d. Disability;
    e. Past and future medical and other health care expenses;
    f. Expense of defending herself at said trial; and,
    g. Loss of consortium and companionship.

38. Defendants, individually and acting in concert, deliberately and with reckless disregard for the truth, fabricated and manufactured evidence they knew, or reasonably should have known, was false, fraudulent, and profoundly lacking in reliability.

39. Defendants omitted exculpatory information from investigative reports, failed to follow investigative and prosecutorial protocol in order to discover and present the truth, refused to consider all available information, and/or even provided false testimony under oath.

40. To bring about Keny Medrano's arrest and prosecution for the death of Brianna Medrano, Defendants ignored and failed to disclose exculpatory information as it became available and fabricated evidence that was demonstrably unreliable, misleading, and false, for purposes of:  a. Providing untrue probable cause for Plaintiff Keny Medrano Cambara's arrest, confinement, and continued prosecution; and, b. Obtaining orders preventing Plaintiff Keny Medrano Cambara from securing release on bond.

41. Defendants did not attempt to determine the truth in their investigation of Brianna Medrano's death.

42. They did not canvass or investigate the location where the injuries to Brianna allegedly occurred.

43. They did not disclose or investigate leads indicating a possible accidental death.

44. Defendants did not seriously consider the possibility of an accidental death.

45. Defendant Haney did not give due consideration to the possibility of an accidental death in her differential diagnosis.

46. Defendants' investigation of Brianna Medrano's death was intended to prove a case against Plaintiff Keny Medrano Cambara despite her actual innocence, which was known or should have been known in the absence of Defendants' deliberate

7

indifference to Plaintiff Keny Medrano Cambara's constitutional rights. Had Defendants not been deliberately indifferent to Plaintiff's constitutional rights, they would have known that Plaintiff Keny Medrano Cambara was actually innocent of any involvement in Brianna Medrano's death.

47. Standard operating procedures for the City of Omaha and Douglas County indicated regarding investigations that "an effort shall be made to observe the scene prior to any tampering, if possible."

48. None of the individual Defendants observed the scene where the injuries to Brianna Medrano were alleged to have occurred or sought to obtain a search warrant to observe the same.

49. The City of Omaha, Douglas County, and Project Harmony all failed to ensure that these operating procedures were followed and adhered to.

50. Standard operating procedures for the City of Omaha and Douglas County required canvassing the scene and any possible witnesses.

51. The individual Defendants failed to search for, contact, or interview possible witnesses. Judge Ashford noted at the hearing where he pronounced his not guilty verdict that "observations were made of the baby, the toddler, Brianna, a day or two before, which would be consistent with vomiting, a bump on the noggin."

52. Defendants failed to canvass and interview possible witnesses who made those observations.

53. Defendants also omitted information they did have regarding those observations from the probable cause affidavit and police reports.

54. Defendants disregarded and omitted material inconsistencies in reports by certain witnesses, including Adriana Medrano, from the probable cause affidavit and police reports.

55. Defendants' failures to observe, investigate, and accurately and completely report tainted the entire investigation and prosecution.

56. At the preliminary hearing in the aforementioned prosecution of Plaintiff Keny Medrano Cambara, on or about March 15, 2011, Defendant Schlote was the only witness who testified for the State of Nebraska. She testified as follows:

Q: And did Dr. Roffman have any idea of whether it [Brianna Medrano's cause of death] was accidental or non-accidental?
A: Non-accidental.
Q: Non-accidental blunt force trauma to the head was the cause of death?
A: Yes.

57. Defendant Schlote admitted at her deposition on February 13, 2012 that the foregoing testimony was not true.

58. For about 11 months after the preliminary hearing, and while Plaintiff Keny Medrano was being detained without bond, none of the Defendants disclosed to the Douglas County District Court or to the Plaintiff Keny Medrano or her attorneys that the testimony was false.

59. Defendants Douglas County, City of Omaha, Project Harmony, Haney, and Kleine are all accountable under 42 U.S.C. § 1983 because they established policies and practices that were intended to and did encourage, endorse, and reward their agents and employees for violating Plaintiff Keny Medrano Cambara's constitutional rights.

60. At the very least, all of the Defendants acted with deliberate indifference to Plaintiff Keny Medrano Cambara's constitutional rights.

61. Defendants Douglas County and City of Omaha; both before and at the time of the events alleged in this Complaint, had in effect policies, practices, and customs that deprived Plaintiff Keny Medrano Cambara of her constitutional rights.

62. The policies, practices, and customs include, but are not limited to the following:
   a. Failing to properly train and supervise officers in the techniques of investigating serious crimes;
   b. Failing to discipline officers who violate the Constitution or law or otherwise violate the rights of criminal suspects during the course of a criminal investigation;
   c. Investigating crimes in a manner designed to prove a case against a convenient suspect by procuring unreliable evidence;
   d. Deliberate indifference to the violation of the rights of a suspect by an officer or employee; and,
   e. Falsifying, fabricating, and concealing evidence without regard to whether policies, practices, and customs might result in the conviction of persons who are actually innocent.

63. These policies, practices, and customs were a direct and proximate cause of the violation of Plaintiff Keny Medrano Cambara's constitutional rights and the injuries visited upon Plaintiff Keny Medrano Cambara as set forth above.

**INTERROGATORY NO. 3:** Identify each Douglas County policymaker Plaintiff contends knew or should have known that the official policy (or policies) responsive to Interrogatory No. 1, above, would result in a violation of Plaintiff's constitutional rights.

**ANSWER:** The Defendant, Don Kleine.

**INTERROGATORY NO. 4:** Identify each and every material fact that Plaintiff contends demonstrates Douglas County policymaking officials' deliberate indifference to – or tacit authorization of – the Douglas County official policy (or policies) responsive to Interrogatory No. 1, above.

**ANSWER:** The material facts are identified above, in response to Interrogatory No. 2.

**INTERROGATORY NO. 5:** Describe any Douglas County custom (also referred to as "practice") which Plaintiff contends caused the damages alleged in her Second Amended Complaint.

**ANSWER:** See Plaintiff Keny Medrano Cambara's response, above, to Interrogatory No. 1.

**INTERROGATORY NO. 6:** Identify each material fact which Plaintiff contends establishes the existence of the Douglas County custom (also referred to as "practice") whose description is responsive to Interrogatory No. 5, above.

**ANSWER:** The material facts are identified above, in response to Interrogatory No. 2.

**INTERROGATORY NO. 7:** Identify each material fact which Plaintiff contends establishes a causal connection between the Douglas County custom (also referred to as "practice") whose description is responsive to Interrogatory No. 5, above, and the damages Plaintiff alleges in her Second Amended Complaint.

**ANSWER:** The material facts are identified above, in response to Interrogatory No. 2.

**INTERROGATORY NO. 8:** Identify each Douglas County policymaker Plaintiff contends knew or should have known of the custom (also referred to as "practice") whose description is responsive to Interrogatory No. 5, above.

**ANSWER:** The Defendant, Don Kleine.

**INTERROGATORY NO. 9:** Identify each fact that Plaintiff contends demonstrates Douglas County policymaking officials' deliberate indifference to – or tacit authorization of – the Douglas County custom (also referred to as "practice") whose description is responsive to Interrogatory No. 5, above.

**ANSWER:** The material facts are identified above, in response to Interrogatory No. 2.

**INTERROGATORY NO. 10:** Identify each item of exculpatory information Plaintiff alleges was omitted from investigative reports, and the person(s) from Douglas County who Plaintiff claims "omitted exculpatory information from investigative reports." (See Second Amended Complaint, ¶ 46)

10

**ANSWER:** The material facts are identified above, in response to Interrogatory No. 2.

**INTERROGATORY NO. 11:** Identify each item of exculpatory information Plaintiff alleges was ignored, and the person(s) from Douglas County who Plaintiff claims "ignored exculpatory information as it became available." (See Second Amended Complaint, ¶ 50)

**ANSWER:** The material facts are identified above, in response to Interrogatory No. 2.

**INTERROGATORY NO. 12:** Identify each item of exculpatory information Plaintiff alleges was not disclosed, and the person(s) from Douglas County who Plaintiff claims "failed to disclose exculpatory information as it became available." (See Second Amended Complaint, ¶ 50)

**ANSWER:** The material facts are identified above, in response to Interrogatory No. 2.

**INTERROGATORY NO. 13:** Identify each item of evidence Plaintiff contends Douglas County fabricated, and the person(s) from Douglas County who Plaintiff claims "fabricated evidence that was demonstrably unreliable, misleading, and false." (See Second Amended Complaint, ¶ 50)

**ANSWER:** The material facts are identified above, in response to Interrogatory No. 2.

**INTERROGATORY NO. 14:** Identify all persons known to Plaintiff who possess or claim to possess knowledge relating to the claims and defenses at issue in this lawsuit and provide a description of the knowledge or information each person identified possesses or claims to possess. (This Interrogatory is intended to elicit identification of persons possessing or claiming to possess information either supporting or tending to refute Plaintiff's claims, and identification of persons possessing or claiming to possess information either supporting or tending to refute Defendants' denials and defenses.)

**ANSWER:**

a. Plaintiff Keny Medrano Cambara – Ms. Medrano Cambara has knowledge of her investigation, arrest, detention, and prosecution related to the death of Brianna Medrano; of the care and condition of Brianna Medrano prior to her death; of one or more of the events referenced in Plaintiff's Second Amended Complaint; and of the damages she has suffered as a result of the acts and omissions she has complained of;

b. Plaintiff Ruben Cambara Cambara – Mr. Cambara Cambara has knowledge of the investigation, arrest, detention, and prosecution of Keny Medrano Cambara related to the death of Brianna Medrano; of one or more of the events referenced in Plaintiff's Second Amended Complaint; and of the damages caused by the acts and omissions he and Keny Medrano Cambara have complained of;

11

c. U.S. Magistrate Judge Michael D. Nelson – Judge Nelson was Keny Medrano Cambara's defense attorney, and has knowledge of the investigation, arrest, detention, and prosecution of Keny Medrano Cambara related to the death of Brianna Medrano; of one or more of the events referenced in Plaintiff's Second Amended Complaint; and of the attorney fees and costs of the defense of Keny Medrano Cambara;

d. Michael McClellan - was Keny Medrano Cambara's defense attorney, and has knowledge of the investigation, arrest, detention, and prosecution of Keny Medrano Cambara related to the death of Brianna Medrano; of one or more of the events referenced in Plaintiff's Second Amended Complaint; and of the attorney fees and costs of the defense of Keny Medrano Cambara;

e. Adriana Martin – Ms. Martin was the mother of Brianna Medrano, and has knowledge of the care and condition of Brianna Medrano prior to her death, and of her participation in the investigation of the death of Brianna Medrano;

f. Huber Medrano – Mr. Medrano was the father of Brianna Medrano, and has knowledge of the care and condition of Brianna Medrano prior to her death, and of his participation in the investigation of the death of Brianna Medrano;

g. Amber Schlote, Adolfo Hernandez, Lance Worley, Nicolas Yanez – These officers have knowledge of the investigation of the death of Brianna Medrano; the investigation, arrest, detention, and prosecution of Keny Medrano Cambara for Brianna's death; the events described in the complaint; the policies, procedures, and protocol of the Omaha Police Department (OPD); and all of these officers' interactions with Dr. Haney, individuals from the Douglas County Attorney's Office (DCAO), individuals from Project Harmony, and other individuals involved regarding the death of Brianna Medrano;

h. Sandra Nemtala – Ms. Nemtala knew Plaintiff from church and has knowledge of the condition of Brianna Medrano prior to her death, and statements made by one or more other witnesses, as well as the extent of her involvement in the investigation of the death of Brianna Medrano;

i. Suzanne Haney, M.D. – Dr. Haney has knowledge of: her medical observations of Brianna Medrano before her death in 2010; her medical education, training, and experience in relation to child abuse cases; her treatment, tests, and/or observations of Brianna Medrano; her work with individuals from OPD during the investigation into the death of Brianna Medrano; her interactions with individuals from DCAO during the prosecution of Medrano Cambara; and, one or more of the events referenced in Plaintiff's Second Amended Complaint;

j. Gene Klein – Mr. Klein has knowledge of the policies, procedures, and protocols of Project Harmony which were in effect during the relevant time period;

k. Donald W. Kleine, Brenda Beadle, Tressa Alioth, Emily Beller – These individuals were all from DCAO and have knowledge of: the policies, procedures, practices, customs, and environment of DCAO; of one or more of the events referenced in Plaintiff's Second Amended Complaint; the investigation into the death of Brianna Medrano, including, without limitation, whether applicable protocols, policies, or procedures were followed by

investigators and/or prosecutors in relation to the death of Brianna Medrano; and the prosecution of Medrano Cambara for the death of Brianna Medrano;
l. Wayne Lovett – Mr. Lovett was the admissions manager for the Douglas County Department of Corrections, and has knowledge regarding the detention of Medrano Cambara; the reason she was initially detained; and the bases for her continued detention through the date of her release;
m. Retired Douglas County Court Judge Edna Atkins – Judge Atkins issued the arrest warrant for Medrano Cambara and presided over the first appearance hearing in the Douglas County Court. She has knowledge of: the basis for issuance of the arrest warrant and her determination to deny bail to Medrano Cambara on February 22, 2011;
n. U.S. Magistrate Judge Susan M. Bazis – Judge Bazis was a Douglas County Court Judge when the alleged events occurred, and has knowledge of: all hearings in Douglas County Court regarding Medrano Cambara which she presided over, including the preliminary hearing of March 15, 2011; and the reasons the case was bound over to District Court for trial and bail was denied;
o. Bassel El-Kasaby – Mr. El-Kasaby was a defense attorney who represented Medrano Cambara at the first appearance and preliminary hearings in Douglas County Court. Mr. El-Kasaby may also have knowledge of the investigation of the death of Brianna Medrano and of Medrano Cambara for Brianna's death.
p. Douglas County District Court Judge W. Mark Ashford – Judge Ashford was the District Court Judge who presided over the criminal proceeding against Medrano Cambara in the Douglas County District Court and found Medrano Cambara not guilty after a bench trial;
q. Brian Olsen, M.D., Kelly Kadlec, M.D., Blaine Roffman, M.D., Rhonda Wright, M.D., Thomas Hejkal, M.D. – Each of the above individuals has knowledge of: their respective treatment, tests and/or observations of Brianna Medrano; their work or interactions with individuals from OPD, Project Harmony, and/or DCAO during the course of the investigation into the death of Brianna Medrano and the related prosecution of Medrano Cambara;
r. Mark J. Schuman, M.D. – Dr. Shuman is a pathologist who provided medical opinions as to the cause, mechanism, and manner of death of Brianna Medrano at the trial in *State of Nebraska v. Keny Medrano-Cambara,* CR10-9078812 in the District Court of Douglas County, Nebraska. Dr. Shuman is familiar with the applicable protocols and standards for accurately determining cause and manner of death;
s. James Gill, M.D. – Dr. Gill is a pathologist who provided medical opinions as to the cause, mechanism, and manner of death of Brianna Medrano at the trial in *State of Nebraska v. Keny Medrano-Cambara,* CR10-9078812 in the District Court of Douglas County, Nebraska;
t. Medical professionals referenced in Brianna Medrano's medical records - Each of these individuals likely has knowledge of his or her respective treatment, tests and/or observations of Brianna Medrano; their work or interactions with individuals from OPD, Project Harmony, and/or DCAO during

13

   the course of the investigation into the death of Brianna Medrano and the related prosecution of Medrano Cambara;
  u. All individuals referenced in the disclosures, pleadings, or discovery responses made by any other party to this proceeding.

**INTERROGATORY NO. 15:** Identify each document Plaintiff relied upon in responding to these Interrogatories.

**ANSWER:** The Second Amended Complaint; a partial transcription of the trial testimony at Keny Medrano Cambara's trial, which concluded March 9, 2012. See also, the note accompanying Plaintiffs' responses to the County requests for production, of even date herewith.

 Dated: December 6, 2017.

          KENY MEDRANO CAMBARA, et al.,
              Plaintiffs,

         By: /s/ *Terry K. Barber*
           One of Their Attorneys

         Joshua D. Barber #22624
         Terry K. Barber  #10188
         Barber & Barber, P.C., L.L.O.
         P.O. Box 4555
         300 North 44th Street, Suite 205
         Lincoln, NE 68503
         (402) 434-5429 (JDB)
         (402) 434-5427 (TKB)

### INTERPRETER'S CERTIFICATION AND SIGNATURE

I certify that I am fluent in English and Spanish, which is the same language as that spoken by Keny Medrano Cambara, and I have read to Keny Medrano Cambara in the Spanish language the entire foregoing document. Medrano Cambara has informed me that she understands the contents of the foregoing document, and has verified the accuracy of every answer.

Dated: December __, 2017.

_____
Signature of Interpreter

_____
Name of Interpreter

_____
Address of Interpreter

_____
Phone Number of Interpreter

_____
Email of Interpreter